UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIAMI HOME LLC,

Plaintiff,

-against-

JEAN-MARC BIJOUX, KAYLA BIJOUX, DARREN BIJOUX, JUNE FREEMAN, CITY OF NEW YORK ENVIRONMENTAL CONTROL BOARD, CITY OF NEW YORK TRANSIT AUTHORITY TRANSIT ADJUDICATION BUREAU, CITY OF NEW YORK DEPARTMENT OF TRANSPORTATION PARKING VIOLATIONS BUREAU,

Defendants.

**REPORT AND RECOMMENDATION**

24-CV-3143 (CBA) (CHK)

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Plaintiff Miami Home LLC brings this mortgage foreclosure action against Jean-Marc Bijoux, June Freeman, City of New York Environmental Control Board ("Environmental Control Board" or "ECB"), City of New York Transit Authority Transit Adjudication Bureau ("Transit Adjudication Bureau" or "TAB"), City of New York Department of Transportation Parking Violations Bureau ("Parking Violations Bureau" or "PVB"), Kayla Bijoux, and Darren Bijoux pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") § 301. Currently before the Court, on referral from the Honorable Carol Bagley Amon, is Plaintiff's motion for a default judgment against Defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure. ECF No. 34. As set forth below, I recommend granting Plaintiff's motion.

## I. <u>Background</u>

The following facts are taken from Plaintiff's complaint and considered true as to liability for the purposes of this default judgment motion. *See generally* Am. Compl., ECF No. 27; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

In May 2007, Defendants Jean-Marc Bijoux and June Freeman (together, "Borrowers") executed and delivered a note to Capital One Home Loans, LLC for a $76,450.00 loan. Am. Compl. ¶ 13. Borrowers secured the note with a mortgage on the property located at 221-02 114th Avenue, Cambria Heights, NY 11411 (the "Property"). *Id.* ¶ 14. In 2011, Borrowers conveyed title to the Property solely to Mr. Bijoux by a deed executed on June 7, 2011. *See* Pl.'s Letter & Ex. A, ECF No. 40.[1]

After several assignments, Gustavia Home LLC was assigned the note in December 2015. *See* Note, ECF No. 34-11, at 2–6. While Gustavia Home held the note, the company defended against a lawsuit brought by a superior mortgage holder in the Supreme Court of New York, Queens County in 2019. *See* Gargiulo Decl., ECF No. 34-20, ¶ 8. That action was discontinued in August 2022. *Id.*

In March 2021, Defendant Jean-Marc Bijoux signed a loan modification agreement with Gustavia Home, resulting in an increased principal balance of $162,210.53. Am. Compl. ¶ 15. Plaintiff was later assigned the note and the mortgage

---

[1] Although Freeman is no longer a title-holder to the Property, her obligations under the Note and Mortgage still stand. *See Gustavia Home, LLC v. Nunu*, No. 16-CV-3989-RJD-SJB, 2018 WL 3574869, at *6 n.4 (E.D.N.Y. July 25, 2018).

based on its physical possession of the wet-ink note. *Id.* ¶¶ 14, 16.[2] Borrowers defaulted under the terms of the note, mortgage, and loan modification agreement by failing to make timely payments as of April 1, 2023. *See id.* ¶ 17; Loan Report, ECF No. 34-18.

On September 20, 2023, Plaintiff served a timely pre-foreclosure notice pursuant to Sections 1304 and 1306 of RPAPL informing Borrowers of their right to cure the default. ECF No. 34-15. After Borrowers failed to respond, Plaintiff initiated this action in April 2024 and filed two subsequent amended complaints in May 2025 and September 2025. *See* ECF Nos. 1, 18, 27. The amended complaints merely added new parties and did not assert any new claims against existing parties.

Defendants City of New York Environmental Control Board and City of New York Department of Transportation Parking Violations Bureau were served on May 30, 2024, through an authorized agent pursuant to CPLR § 307(2) and Fed. R. Civ. P. 4(j)(2)(B). ECF Nos. 5, 7. Defendant City of New York Transit Authority Transit Adjudication Bureau was served on June 4, 2024, also through an authorized agent. ECF No. 6. Defendant Jean-Marc Bijoux was personally served on June 24, 2024, pursuant to Fed. R. Civ. P. 4(e)(2)(A). ECF No. 8. Defendants June Freeman, Kayla Bijoux, and Darren Bijoux were all served by leaving a copy of the summons and complaint at their dwelling, pursuant to Fed. R. Civ. P. 4(e)(2)(B), on July 3, 2024,

[2] On June 15, 2026, the Court directed Plaintiff to file a supplemental response after the Court identified an inconsistency between the date and amount of the original Note and the date and amount of the loan as described in the allonge assigning Plaintiff's interest. *See* June 15, 2026 Order. Plaintiff subsequently filed a copy of the correct allonge identifying the assignment to Plaintiff. *See* ECF No. 38.

June 14, 2025, and September 11, 2025, respectively. ECF Nos. 9, 21, 29. Plaintiff moved for, and the Clerk entered, a certificate of default against all Defendants. ECF Nos. 14, 25, 35. This motion for default judgment followed. ECF No. 34.

## II. Legal Standards

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by recording a notation of the party's default on the docket maintained by the Clerk. *See id.*; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. *See* Fed R. Civ. P. 55(b). Even after entry of default, the court retains discretion over whether to grant a final default judgment. *Finkel v. Triple A Group, Inc.,* 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010) (citing *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993)).

For the purposes of default judgment, the Court must accept a plaintiff's well-pleaded factual allegations as true, as the defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound*, 973 F.2d at 158. However, the Court need not accept legal conclusions and has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for

liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.,* 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Although a party's default is considered a concession of all well-pleaded allegations of liability, it is not an admission of damages. *Greyhound Exhibitgroup*, 973 F.2d at 158. Therefore, when moving for default judgment, the plaintiff bears the burden of proving the amount of damages with a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Courts may rely on "detailed affidavits and other documentary evidence" to prove damages. *E. Sav. Bank, FSB v. Whyte*, No. 13-CV-6111 CBA LB, 2015 WL 790036, at *6 (E.D.N.Y. Feb. 24, 2015); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may decline to award damages in a default judgment motion if the plaintiff cannot prove damages to a reasonable certainty, "even where liability has been established[.]" *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 717 (S.D.N.Y. 2018).

## III. Analysis

As reflected above, Plaintiff has complied with the procedural requirements for seeking a default judgment. Plaintiff has complied with the notice provisions under Sections 1304 and 1306 of RPAPL. Additionally, all Defendants were served with a copy of the summons and complaint and have not answered or otherwise appeared. *See* ECF Nos. 5–9, 21, 29. The Clerk of the Court has entered a certificate of default for all Defendants. *See* ECF Nos. 14, 25, 35. Finally, Plaintiff has filed an affidavit of

service demonstrating that it mailed the motion for default judgment and supporting papers to Defendants and complied with the requisite procedural requirements. ECF No. 35.

### A. Foreclosure

#### 1. Mortgagor Liability

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." *Freedom Mortg. Corp. v. Trejo*, No. 22-CV-7116, 2024 WL 3465241, at *7 (E.D.N.Y. July 19, 2024) (quoting *Windward Bora, LLC v. Brown*, No. 21-CV-03147 (KAM) (RER), 2022 WL 875100, at *3 (E.D.N.Y. Mar. 24, 2022)). "[O]nce a plaintiff mortgagee in a foreclosure action has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Trejo*, 2024 WL 3465241, at *7 (quoting *United States v. Watts*, No. 13-CV-3211 (ADS) (WDW), 2014 WL 4275628, at *2 (E.D.N.Y. May 28, 2014)).

Here, Plaintiff has established a *prima facie* entitlement to a default judgment against Borrowers. As noted above, the Complaint alleges that Borrowers executed and delivered a note, secured by a mortgage, in the principal amount of $76,450.00, plus interest. Am. Compl. ¶ 13; Note. Plaintiff also alleges that it came to be the current holder of the note and mortgage "by virtue of its physical possession of the wet-ink note" following several assignments. Am. Compl. ¶¶ 15–16; Note. Finally,

Plaintiff has alleged that Borrowers have defaulted on their obligations under the note and mortgage by failing to make timely payments. Am. Compl. ¶ 17. Accordingly, in the absence of any showing by Borrowers, Plaintiff has established its entitlement to a judgment of foreclosure and an award in the amount of the unpaid principal, plus accrued interest. *See Miss Jones, LLC v. Brahmadutta Bisram, Y & S Dev. of NY, Inc.*, No. 16-CV-7020, 2018 WL 2074200 (E.D.N.Y. Feb. 5, 2018), *report and recommendation adopted*, 2018 WL 2074205 (E.D.N.Y. Feb. 22, 2018); *Deutsche Bank Nat. Tr. Co. v. Pietranico*, 33 Misc. 3d 528, 928 N.Y.S.2d 818 (Sup. Ct. 2011), *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2d Dep't 2013) (under New York law, the owner or holder of the promissory note holds the right to commence a foreclosure action).

**2. Non-Mortgagor Defendants**

Plaintiff has also named the Environmental Control Board, the Transit Adjudication Bureau, the Parking Violations Bureau, Kayla Bijoux, and Darren Bijoux as non-mortgagor defendants because of judgment liens they hold or may hold against the Property, or because they are tenants of the Property. Am. Compl. ¶¶ 5–9.

Under RPAPL § 1311(3), "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" shall be joined as a necessary party to a foreclosure action. Where a plaintiff does not seek any specific relief from the non-mortgagor defendants, "courts have held that entry of default judgment pursuant to Rule 55 is appropriate where the

complaint alleges 'nominal liability,'—*i.e.*, that any judgments or liens a defendant may have against the property are subordinate to the plaintiff's lien." *Fed. Nat'l Mortg. Ass'n v. 204 Ellery St., LLC*, No. 23 CV 5343, 2025 WL 1309875, at *13 (E.D.N.Y. Mar. 6, 2025) (quoting *OneWest Bank, NA v. Raghunath*, No. 14 CV 3310, 2015 WL 5772272, at *3 (E.D.N.Y. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015)). When a court enters a default judgment against a defendant with a nominal interest in the property, their interest is terminated. *Trejo*, 2024 WL 3465241, at *9 (quoting *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020)).

**i. City Defendants**

Plaintiff alleges that three City departments have a nominal interest in this case because they are subordinate judgment creditors on the Property: the Environmental Control Board, Transit Adjudication Bureau, and Parking Violations Bureau. Am. Compl. ¶¶ 5–7. Section 202-a(1) contains a heightened pleading standard for nominal defendants that are city agencies, which requires that the plaintiff must allege in the complaint "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." RPAPL § 202-a(1); *204 Ellery St., LLC*, 2025 WL 1309875, at *13. "Conclusory allegations that an entity is the holder of a lien encumbering the property, which is subject and subordinate to the plaintiff's mortgage, are insufficient." *Miami Home, LLC v. Ahmed*, No. 22-CV-1607-FB-JRC, 2023 WL 2189301, *5 (E.D.N.Y. Feb. 8, 2023), *report and recommendation adopted*, 2023 WL

2187486 (E.D.N.Y. Feb. 23, 2023). Therefore, the complaint must contain more than bare allegations that the City entities were necessary parties because of possible liens encumbering the property. *Com. Lender LLC v. 413 Greene Realty 2014 Corp.*, No. 22-CV-2910 (HG)(PK), 2023 WL 7000877, at *5 (E.D.N.Y. Sept. 7, 2023).

The Court finds that Plaintiff has met the heightened pleading standard with respect to the Environmental Control Board only. Although Plaintiff's allegations against the Environmental Control Board are limited, Plaintiff attached to the complaint evidence of unpaid balances incurred by the Property owed to the Environmental Control Board, including the date the payment was owed and the amount due. ECB Record. Several courts have found such information sufficient to meet the heightened pleading standard. *See Miss Jones, LLC*, 2018 WL 2074200, at *4 ("Title-search documents showing amounts owed to city agencies are sufficient to meet a plaintiff's obligations under Section 202-a(1)."); *CIT Bank, N.A. v. Louis*, No. 15-CV-00597, 2017 WL 448956, at *2 (S.D.N.Y. Jan. 26, 2017) (finding title search documents reflecting "monies owed to the ECB by defendants" sufficient to show the ECB's interest); *cf. Trejo*, 2024 WL 3465241, at *10 (finding list of purported parking violations sufficient to establish PVB's nominal liability). Accordingly, I recommend granting Plaintiff's motion for default judgment with respect to the ECB.

By contrast, the documentation Plaintiff submitted in support of the alleged interest held by Transit Adjudication Bureau and Parking Violations Bureau does not suggest that either agency holds an interest in the Property. Plaintiff's documentation shows one possible judgment against Jean-Marc Bijoux, however, it

lists a different residential address than the Property. *See* TAB and DOT Report, ECF No. 27-3, at 1. The document also lists several potential judgments against Freeman, but none of the names or addresses fully match Freeman's name and address. *See id*. When combined with the Complaint's bare assertion that the documentation lists the "possible amounts owed" to the Transit Adjudication Bureau and Parking Violations Bureau, Plaintiff's allegations fall short of pleading the detailed facts required to demonstrate the agency's interest in the Property. *See Windward Bora, LLC v. Thompson*, No. 18-CV-1811, 2020 WL 1242828, at *6 (E.D.N.Y. Mar. 16, 2020) (denying default judgment against city agencies where the plaintiff's supportive documentation listed different names and addresses than the defendants). Accordingly, I recommend that Plaintiff's motion for default judgment be denied as to the Transit Adjudication Bureau and Parking Violations Bureau.

**ii. Tenant Defendants**

Plaintiff also seeks default judgment against Kayla Bijoux and Darren Bijoux, who Plaintiff asserts are necessary parties because they are current tenants at the Property. Am. Compl. ¶ 8–9; *see* RPAPL § 1311(1) (necessary parties to a mortgage foreclosure include "[e]very person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years"). Courts regularly enter default judgement against non-owner tenants, as they have a nominal interest in the property and are therefore necessary parties. *See, e.g.*, *E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308, 2016 WL 3365091, at *4 (E.D.N.Y. May 9, 2016), *report and recommendation adopted*, 2016 WL 3102021 (E.D.N.Y. June 2,

2016); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Robedee*, No. 22-CV-00809, 2022 WL 18284844, at *5 (E.D.N.Y. Dec. 5, 2022), *report and recommendation adopted,* 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022). As Plaintiff has adequately pleaded Kayla Bijoux and Darren Bijoux's nominal interest in the Property as tenants, and both parties have failed to appear in this case, I respectfully recommend that a default judgment be entered against both tenant defendants and that their respective interests in the Property, if any, be terminated.

**B. Damages**

Based on the terms of the note, mortgage, and loan modification agreement, Plaintiff seeks $162,210.53 for the principal balance of the loan, $63,893.01 in past due interest, $48.66 in late fees, $18,762.93 in unpaid loan charges or advances, and $30,776.76 in legal fees and costs, for a total of $244,915.13. Ramer Decl., ECF No. 34-10, ¶¶ 26–27; Gargiulo Decl., ECF No. 34-20. I consider each category of damages requested by Plaintiff in turn.

**1. Damages Against Jean-Marc Bijoux, Not June Freeman.**

As an initial matter, I recommend that the award of damages be entered against Mr. Bijoux alone and not against Ms. Freeman. Although Plaintiff seeks damages calculated based on the terms of the loan modification agreement, Plaintiff fails to explain why it seeks these damages against Ms. Freeman, who was not a party to the loan modification agreement and conveyed her title interest to Mr. Bijoux nearly ten years ago. *See* Pl.'s Letter at 2–3, ECF No. 40. While Plaintiff has reaffirmed its intention to enforce the modification agreement against Mr. Bijoux, *see*

Pl.'s Letter at 2, it does not express the same intention to enforce the agreement against Ms. Freeman. Although Ms. Freeman remains liable under the terms original note, Plaintiff fails to provide any calculation of damages with respect to Ms. Freeman's obligations under the original note. Because it is Plaintiff's burden to prove damages at the default judgment stage, I recommend that damages be awarded only against Mr. Bijoux. *See Hutchins v. Palmer*, No. 12-CV-5927 (JFB) (AKT), 2018 WL 2031941, at *6 (E.D.N.Y. Feb. 9, 2018), *report and recommendation adopted,* 2018 WL 1202639 (E.D.N.Y. Mar. 8, 2018) ("It is within the discretion of the Court to decline to award damages pursuant to a default judgment where plaintiffs who have secured the default judgment fail to submit any documentary evidence to substantiate a calculation of damages."); *see also U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey*, No. 20-CV-91 (FB) (RLM), 2022 WL 1422841, at *8 (E.D.N.Y. Mar. 24, 2022), *report and recommendation adopted*, 2022 WL 2390989 (E.D.N.Y. July 1, 2022) (declining to award damages against one defendant where the plaintiff did not explain why damages were sought against both defendants where only one signed the modified note); *Wilmington Sav. Fund Soc'y, FSB v. Stopanio*, 240 A.D.3d 939, 940 (2d Dep't 2025) (denying motion for default judgment where "plaintiff offered no explanation for the absence of [one defendant's] signature on the loan modification agreement despite her having been named a borrower thereunder.").

### 2. Unpaid Principal and Interest

In an action for foreclosure and sale, damages should be determined under the terms of the note and mortgage. *See, e.g.*, *JXB 84 LLC v. Khalil*, No. 15-CV-6251, 2017 WL 1184001, at *5 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1184141 (E.D.N.Y. Mar. 29, 2017). Plaintiff supports its claim of damages for the unpaid principal and interest by providing a Demand Loan Payoff statement and Loan Master Report from FCI Lender Services, Inc. Ramer Decl. ¶¶ 23–26; Loan Master Report ("Loan Report"), ECF No. 34-18; Loan Payoff Demand ("Payoff Demand"), ECF No. 34-19.

Plaintiff's request for entry of judgment for the unpaid principal balance of $162,210.53 is supported by the terms of the mortgage and loan modification agreement, which provide that upon default, the holder may request immediate payment in full. Mortgage, ECF No. 34-12, ¶ 20; Loan Modification Agreement, ECF No. 34-13. Additionally, the Declaration of John Ramer, Plaintiff's "Authorized Representative," Loan Master Report, and Demand Loan Payoff all reflect that the outstanding principal balance was $162,210.53. *See* Ramer Decl. ¶ 26; Loan Report; Payoff Demand. Based on this information, I respectfully recommend awarding Plaintiff $162,210.53 in unpaid principal balance. *See Windward Bora LLC v. Durkovic as Tr. of McQueen Fam. Tr.*, No. 22-CV-411 (MKB), 2024 WL 3455841, at *7 (E.D.N.Y. July 18, 2024) (awarding plaintiff $156,173.658 in unpaid principal balance based on plaintiff's documentation, including loan statements and affidavits, confirming amount owed); *E. Sav. Bank, FSB v. Beach*, No. 13 CV 341, 2014 WL

923151, at *10–11 (E.D.N.Y. Mar. 10, 2014) (awarding plaintiff amount requested where plaintiff provided the defendants' payment history).

Plaintiff also seeks $63,893.01 in past due interest from March 1, 2023 to September 5, 2025 (when Plaintiff ran the loan payoff report), plus interest accruing after that date. *See* Note ¶ 2; Loan Report; Payoff Demand. Based on the terms of the Loan Modification Agreement, Plaintiff alleges that interest has been accruing at a rate of 16% since Borrowers' default on April 1, 2023, for a claimed daily interest rate of $72.09. Ramer Decl. ¶ 27; Loan Modification Agreement ¶ 15.[3]

As an initial matter, Plaintiff appears to calculate the interest by multiplying the interest-bearing principal of $162,210.53 by 16% and dividing that number by 360 days to obtain the per diem interest of $72.09, then multiplying that number by the number of days that have passed since the date of default. I find, however, that the calculation should be based on a calendar year of 365 days. *See Windward Bora, LLC v. Chazon*, No. 19-CV-3912, 2020 WL 1034362, at *4 (E.D.N.Y. Jan. 8, 2020), *report and recommendation adopted,* 2020 WL 1031532 (E.D.N.Y. Mar. 3, 2020) (finding error in plaintiff's per diem interest rate calculation when plaintiff used 360 days); *Blue Castle (Cayman) Ltd. v. Astudillo*, No. 23-CV-3851 (LDH)(PK), 2024 WL 3813309, at *6 (E.D.N.Y. July 26, 2024) (same). Substituting 365 days into the same formula above, the per diem interest rate is $71.10.

[3] The Note explains that the default interest rate is the "maximum rate allowed per law." Loan Modification Agreement ¶ 15. The maximum interest rate permitted by New York law is 16%. *See* N.Y. Gen. Oblig. Law § 5-501(1); N.Y. Banking Law § 14-a(1).

Taking the per diem interest rate ($71.10) and multiplying it by the days between Plaintiff's default on April 1, 2023 and November 11, 2025, the date this motion was filed (956 days, inclusive of the start and end dates), Plaintiff is owed $67,971.60 in total accrued interest in addition to the unpaid principal balance, plus $71.10 per day from November 11, 2025 until the entry of final judgment.

**3. Late Fees and Other Charges**

Plaintiff seeks $48.66 in unpaid late fees and $18,762.93 in unpaid loan charges or advances. *See* Ramer Decl. ¶ 27; Payoff Demand; Loan Report. Under the note, Borrowers owed a late fee of 2% of the monthly payment if the payment was made 15 days after the due date. Note ¶ 4(A). Borrowers' monthly payment was $811.05, making any late fee total $16.22. *See* Loan Report at 2.

Plaintiff's submissions only identify two months where Borrowers incurred late charges: January 2023 and March 2023. *See id.* Both late fees were $16.22, totaling $32.44. Because Plaintiff's submissions fail to identify any other month where Borrowers incurred a late fee, I recommend granting Plaintiff only $32.44 in late fees. *See Freedom Mortg. Corp. v. Phillip*, No. 19-CV-1215, 2020 WL 9812917, at *5–6 (E.D.N.Y. Mar. 2, 2020) (recommending the award of unpaid principal balance and unpaid interest, but recommending denying plaintiff's request for late charges without prejudice because the plaintiff "fail[ed] to identify the months [the] defendants allegedly incurred these late charges and fail[ed] to provide supporting documents"), *report and recommendation adopted* (E.D.N.Y. Apr. 8, 2020). On the other hand, Plaintiff's request for $18,762.93 in unpaid loan charges or advances,

consisting entirely of foreclosure attorney and administrative fees, is substantiated by the Loan Report, and should therefore be granted. *See* Loan Report; Note ¶ 4(D) (allowing Plaintiff to repayment of "all costs and expenses" associated with Borrowers' default).

**4. Attorney's Fees and Costs**

Plaintiff also seeks $30,776.76 in attorney's fees and costs and has submitted contemporaneous time records to support this request. *See* Gargiulo Decl. Ex. 1. "A plaintiff in a foreclosure action may recover attorney's fees and costs against a borrower-defendant if the Note or Mortgage provides for such an award." *Blue Castle*, 2024 WL 3813309, at *7 (*quoting U.S. Bank, N.A. for LSF9 Master Participation Trust v. Toney*, No. 17 CV 5516, 2018 WL 3946506, at *6 (E.D.N.Y. July 13, 2018)). Here, the Loan Documents permit Plaintiff to recover attorney's fees and costs. Note ¶ 4(D); Mortgage ¶ 7.

To calculate attorney's fees, the court should consider "the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 193 (2d Cir. 2008). The lodestar—the presumptively reasonable fee—is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The party seeking to recover attorney's fees bears the burden of establishing that the fees are reasonable. *Ehrlich v. Royal Oak Fin. Servs., Inc.,* 12–CV–3551 (BMC), 2012 WL 5438942, at *3 (E.D.N.Y. Nov. 5, 2012).

Plaintiff's counsel, Hasbani & Light, P.C., requests an hourly rate of $215 per attorney and $500 flat fee for each court appearance. Gargiulo Decl. ¶ 9. In determining whether this hourly rate is reasonable, the Court applies "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted). Attorney's fees awarded in the Eastern District of New York for cases concerning mortgages and promissory notes "have tended to be lower than in other cases." *Beach*, 2014 WL 923151, at *13 (citation omitted) (citing mortgage and promissory note cases awarding partners $250–275 per hour and associates $150–175 per hour); *Blue Castle*, 2024 WL 3813309, at *7 (using same rates).

Plaintiff's counsel's declaration in support of attorney's fees provides contemporaneous time and billing records for the legal services performed, but includes no information about the experience of the attorney who billed time to this litigation. Therefore, the Court should apply a reasonable hourly rate for an associate, and I find that $150.00 per hour is reasonable for this case. *Blue Castle*, 2024 WL 3813309, at *7 (granting fees at an hourly rate of $150 in light of the plaintiff's failure to include information about the billing attorney's experience). Although Plaintiff's counsel also seeks a $500 flat fee for each court appearance, the Court does not find, nor does counsel provide, any reason to distinguish time spent in court from other legal work. Therefore, the Court will apply the hourly rate of $150 to both counsel's

court appearances and assume each court appearance lasted one hour, for a total of $300.

Plaintiff requests fees for 125.2 hours of work by the attorneys at Hasbani & Light, P.C. Gargiulo Decl. ¶ 9. "To determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. 15-CV-5429 (DRH)(AKT), 2016 WL 7167955, at *10 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016) (quoting *Fox. Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)). Plaintiff submitted contemporaneous time sheets showing work performed in this case from March 12, 2019 to November 10, 2025, including work performed in the 2019 action to defend Gustavia Home's interest in the mortgage as the note holder. *See* Gargiulo Decl. ¶ 8. As an initial matter, the Court finds that the fees associated with the 2019 action are recoverable under the terms of the mortgage, which provides that if any person or entity "begins a legal proceeding that may significantly affect Lender's rights in the Property" Borrowers will incur the costs associated with the action—including attorney's fees and costs. Mortgage ¶ 7; *cf. U.S. Bank Nat'l Assoc. v. Mazel on Del LLC*, No. 22-CV-00602-LJV-LGF, 2025 WL 4745454, at *11 (W.D.N.Y. Dec. 5, 2025), *report and recommendation adopted*, 2026 WL 1494793 (W.D.N.Y. Feb. 4, 2026) (permitting recovery of attorney's fees associated with three bankruptcy petitions in addition to foreclosure action). Even

though at the time of the 2019 action Gustavia Home had possession of the note and mortgage rather than Plaintiff, the right to collect such fees also transferred to Plaintiff with the assignment of the note and mortgage. After reviewing Plaintiff's invoices, the Court finds that 125.2 hours is a reasonable number of hours expended on this case and the 2019 action. Accordingly, Plaintiff is entitled to $19,080 in attorney's fees, reflective of 125.2 hours of work billed at $150 an hour and two court appearances totaling $300.

However, the Court notes that, as discussed *supra* III.B.3, Plaintiff requested $18,762.93 in unpaid loan charges or advances, which consisted almost exclusively of "foreclosure attorney fees." *See* Payoff Demand; Loan Report. Plaintiff fails to differentiate between the attorney's fees requested here and the fees associated with the unpaid loan charges or advances that it also seeks. Because it is Plaintiff's burden to demonstrate entitlement to fees, and out of concern that Plaintiff's counsel may be "double dipping" in its request for fees, the Court lowers Plaintiff's award of attorney's fees by $18,762.93—the total unpaid loan charges or advances recovered by Plaintiff. *See Green Mountain Holdings (Cayman) Ltd. v. La Hacienda Bufeis LLC*, No. 21 CV 0574 (ENV) (CLP), 2025 WL 3460468, at *4–6 (E.D.N.Y. Feb. 5, 2025) (addressing similar concerns about the plaintiff's request for an award of unpaid loan charges or advances). Accordingly, I recommend that Plaintiff be awarded $317.07 in attorney's fees.

Plaintiff also seeks $2,686.76 in costs. *See* Gargiulo Decl. ¶ 10. Specifically, Plaintiff seeks:

| **Expense** | **Amount** |
| --- | --- |
| Postage Costs related to 2019 Action | $ 16.25 |
| Filling Fee for RJI in 2019 Action | $ 95.00 |
| Court Reporter Fee for Deposition | $ 345.35 |
| Postage Costs related to Mailing Pre- Foreclosure Demands | $ 29.73 |
| Fee for Order Vacating Referee's Deed from 2019 Action | $ 0.60 |
| Foreclosure Search Fee | $ 400.00 |
| Filing Fee for Foreclosure Complaint | $ 405.00 |
| Filing Fee for Notice of Pendency | $ 36.05 |
| Service of Process Fees | $ 1,294.00 |
| Postage Costs for Mailing Documents in Instant Foreclosure Actions | $ 64.78 |

As a general matter, "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable." *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 279 (E.D.N.Y. 2010) (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Moreover, both the note and mortgage at issue here provide for reimbursement of costs and expenses. *See* Note ¶ 4; Mortgage ¶ 7. When seeking to recover costs, however, the burden is on the applicant to "adequately document[ ] and itemiz[e] the costs requested." *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016) (citation omitted).

I find that Plaintiff has adequately demonstrated its entitlement to these costs. "Court fees reflected on the Court's docket and costs for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020). Here, Plaintiff's invoices and receipts sufficiently substantiate the requested

relief for costs, and Plaintiff's counsel has sworn under penalty of perjury that the costs are accurate. *See* Gargiulo Decl. I therefore recommend that Plaintiff be awarded $2,686.76 in costs.

### C. Sale of Property as One Parcel

Plaintiff also asks the Court to find that the Property may be sold in one parcel. "Absent unusual circumstances, it can be presumed that a subject property consisting of a single tax lot is properly sold in a single sale." *Miss Jones LLC v. Arcello*, No. 17-CV-895, 2018 WL 1525800, at *6 (E.D.N.Y. Mar. 2, 2018), *report and recommendation adopted*, 2018 WL 1525664 (E.D.N.Y. Mar. 28, 2018) (quoting RPAPL § 1321 (2017 Supplemental Practice Commentary)). No unusual circumstances are presented, as the Property consists of only a single tax lot. *See* Note; Ramer Decl. ¶ 28. Accordingly, I recommend selling the Property in once parcel. *See Miss Jones, LLC*, 2018 WL 2074200, at *5 (directing sale of property as one parcel under similar circumstances).

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the Court grant Plaintiff's motion for a default judgment against the Borrowers, the Environmental Control Board, Kayla Bijoux, and Darren Bijoux but deny the motion as to the Transit Adjudication Bureau and Parking Violations Bureau. I also recommend granting Plaintiff damages, against Defendant Jean-Marc Bijoux only, in the amount of $251,981.33, comprising $162,210.53 in unpaid principal balance due on the note, $18,795.37 in late fees and loan charges, $3,003.83 in attorney's fees and costs, and $67,971.60 in unpaid interest, plus interest accruing at a rate of $71.10 per day from

November 12, 2025 until the Court enters final judgment. Finally, I recommend that the Property be sold in one parcel.

* * * * *

Objections to this report and recommendation must be filed within fourteen (14) days of service. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision") (quotation marks omitted).

SO RECOMMENDED.

/s/ Clay H. Kaminsky_______
CLAY H. KAMINSKY
United States Magistrate Judge

Dated: August 24, 2026
Brooklyn, New York